Stephen H.M. Bloch # 7813
David Garbett (NY # 4580114) (*pro hac vice pending*)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, Utah 84103
Telephone: (801) 486-3161
Fax: (801) 486-4233

Nada Wolff Culver (CO # 22180) (*pro hac vice pending*)
THE WILDERNESS SOCIETY
1660 Wynkoop Street, Suite 850
Denver, Colorado 80202
Telephone: (303) 650-5818
Fax: (303) 650-5942

Attorneys for Plaintiffs
Nine Mile Canyon Coalition *et al.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NINE MILE CANYON COALITION, a Utah non-profit corporation; SOUTHERN UTAH WILDERNESS ALLIANCE, a Utah non-profit corporation; THE WILDERNESS SOCIETY, a non-profit corporation, )<br>)<br>)<br>)<br>) | |
| Plaintiffs, ) | Case No. 2:08cv586 (DB)<br>Honorable Dee Benson |
| ) | |
| vs. ) | |
| ) | |
| MIKE STIEWIG, in his official capacity as the Associate Manager of the Price Field Office of the Bureau of Land Management; THE UNITED STATES DEPARTMENT OF THE INTERIOR; THE BUREAU OF LAND MANAGEMENT, )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. )<br>) | |

**COMPLAINT AND REQUEST FOR DECLARATORY
AND INJUNCTIVE RELIEF**

1.      This suit challenges the decision by the Department of the Interior; Mike Stiewig, the Associate Manager of the Price Field Office of the Bureau of Land Management; and the Bureau of Land Management (collectively referred to as "BLM") authorizing the drilling and operations of twenty-five natural gas wells for Bill Barrett Corporation (BBC) pursuant to statutory categorical exclusions in Utah's Nine Mile Canyon region.

2.      Utah's Nine Mile Canyon region, which includes the West Tavaputs Plateau, is one of the most remarkable, remote, and wild areas of the state.  Nine Mile Canyon, which bisects the Tavaputs Plateau and contains a series of dirt roads used to access these gas wells, hosts countless treasures of Native American history.  The Nine Mile Canyon region contains dwellings, relics, and rock art of immense value and significance to the Native American cultures of the area.

3.      BLM's use of these categorical exclusions conflicts with the plain language of the National Environmental Policy Act (NEPA).  BLM unlawfully applied these categorical exclusions despite the lack of any supporting existing environmental analysis under NEPA.  Now, the construction and operation of these wells is likely to have detrimental effects on the integrity of the Nine Mile Canyon region.  BLM should not have used these categorical exclusions because of the existence of several extraordinary circumstances.  Finally, BLM failed to conduct the analysis of the wells' effects on cultural resources required by the National Historic Preservation Act (NHPA).

4.      Compliance with NEPA and the NHPA requires that federal agencies adhere to the precautionary principle of "think first, and act later."  BLM has turned this principle on its head, acting first, without any intention of thinking.  Such neglect by

BLM will undoubtedly result in substantial and irreversible impacts to the cultural artifacts of the Nine Mile Canyon region.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to NEPA, 42 U.S.C. §§ 4321 *et seq.*, and its implementing regulations; the NHPA, 16 U.S.C. §§ 470 *et seq.*, and its implementing regulations; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*; and 28 U.S.C. § 1331 (federal question).

6.      Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

7.      Venue is proper in the Central Division of the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(e) because the statutory violations alleged herein all occurred within the State of Utah.

## PARTIES

8.      Plaintiff NINE MILE CANYON COALITION (9MCC) is a Utah non-profit organization dedicated to the preservation and protection of Nine Mile Canyon.  To that end, 9MCC fosters educational and interpretive programs, including promoting scientific research in Nine Mile Canyon; helping with the inventory of cultural and natural resources; and furthering educational, interpretative, and preservation programs. 9MCC does not oppose the natural gas industry and it does not oppose the legal development of oil and gas leases.  Throughout its fifteen-year history, 9MCC has worked on numerous projects to protect the historical resources in Nine Mile Canyon and the surrounding area, as well as to enhance the experience of canyon users and visitors.

In fact, it is leading the way in the nomination of Nine Mile Canyon to the National Register of Historic Places.  9MCC members use and enjoy Nine Mile Canyon and the surrounding plateaus of the Tavaputs and the Book Cliffs.  9MCC members use the areas of Nine Mile Canyon, the Tavaputs Plateau, and the Book Cliffs that will be impacted by these twenty-five gas wells, for a variety of purposes, including historical appreciation, research, aesthetic appreciation, and recreation and are directly harmed by BLM's decision to approve these wells.  9MCC brings this action on its own behalf and on behalf of its members.

9.      Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE (SUWA) is a non-profit environmental membership organization dedicated to the sensible management of all public lands within the State of Utah, to the preservation and protection of plant and animal species, and to the preservation of Utah's remaining wild lands.  SUWA has offices in Utah and Washington, D.C.  SUWA has members in all fifty states and several foreign countries.  SUWA members use and enjoy public lands in and throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, hunting, aesthetic appreciation, and financial livelihood.  SUWA members frequently visit and recreate (e.g., sightsee, view and appreciate pre-historic and historic cultural sites, and enjoy solitude) throughout the lands in this area, the area where these categorical exclusions were approved, and Nine Mile Canyon, that are the subject of this complaint.  SUWA brings this action on its own behalf and on behalf of its adversely affected members.

10.      Plaintiff THE WILDERNESS SOCIETY (TWS) is a non-profit national leadership organization founded in 1935.  TWS works to protect America's wilderness

and to develop a network of wild lands, through public education, scientific analysis, and advocacy.  TWS's goal is to ensure that future generations will enjoy the clean air, water, wildlife, beauty, and opportunities for recreation and renewal that pristine deserts, mountains, forests, and rivers provide.  TWS views protecting wilderness quality and other sensitive Utah BLM-managed lands as vital to achieving its mission.  TWS has worked for years to protect BLM wilderness-quality and other sensitive lands in Utah, including the spectacular lands in Utah's wild Book Cliffs and Tavaputs Plateau.  TWS members use the public lands in this area, the area where these categorical exclusions were approved, and Nine Mile Canyon, for a variety of purposes, including recreation, aesthetic appreciation, and viewing pre-historic and historic cultural sites and are directly harmed by BLM's decision to approve these wells.  The Wilderness Society brings this action on its own behalf and on behalf of its members.

11.     9MCC, SUWA, and TWS (collectively "the Coalition") and their members' interests have been directly affected and irreparably harmed by the BLM's categorical exclusion and approval of these twenty-five gas wells because their construction and operation has already and will cause sustained and prolonged damage to the environment, in Nine Mile Canyon, the Book Cliffs, and the Tavaputs Plateau.  The Coalition and their members also have a substantial interest in seeing that BLM complies with the terms and requirements of NEPA and the NHPA.

12.     Defendant MIKE STIEWIG is the associate manager of the Bureau of Land Management's Price Field Office and is charged with overseeing the management of the Price Field Office, including oil and gas exploration activities, in the absence of the field office manager.  Associate Manager Stiewig signed the categorical exclusions

approving these twenty-five gas wells thereby authorizing BBC to drill and operate these wells.

13.     Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is responsible for managing just under 500 million acres of federal public lands for a variety of competing resources, including oil and gas development, as well as for the protection of the natural and human environment.  The Department of the Interior is required to comply with NEPA and the NHPA, and to evaluate, analyze, and disclose the impacts of federal undertakings to the public.

14.     Defendant BUREAU OF LAND MANAGEMENT is the agency within the U.S. Department of the Interior directly responsible for carrying out the Department's obligations under statutes and regulations governing oil and gas exploration, leasing, and development, and for complying with NEPA and the NHPA.  BLM manages approximately 23 million acres in Utah.

**FACTS GIVING RISE TO PLAINTIFFS' CAUSE OF ACTION**

15.     Nine Mile Canyon has been described by the State of Utah as an "outdoor museum" that "should be shown the respect due to one of the West's ancient treasures." Utah.com, Nine-Mile Canyon http://www.utah.com/playgrounds/nine_mile.htm (last visited Aug. 5, 2008).  BLM acknowledges that Nine Mile Canyon contains "the greatest concentration of rock art sites" in the United States.  BLM, Nine Mile Canyon – What to See and Do http://www.blm.gov/ut/st/en/fo/price/recreation/9mile/9mile_col2.html (last visited Aug. 5, 2008).  More than 1,000 of these sites have been located, along with centuries-old standing structures such as cliff dwellings and pit houses, in Nine Mile Canyon.

16.     BLM stated in one publication that

Nine Mile Canyon has often been described as the "longest outdoor art gallery in the world" and is internationally recognized for its substantial concentration of prehistoric archaeological sites and renowned rock art panels.  There are also a number of historic features in the area, dating from the 1880s, which have regional significance.  Nine Mile Canyon itself has been classified as a BLM Backcountry Byway and a State of Utah Scenic Byway.  In addition, the Canyon and surrounding area is a proposed archeological district to be listed on the National Register of Historic Places (NRHP). . . .  The unique cultural resources, scenic value, and recreational draw of the Nine Mile Canyon prompted the BLM to create the Nine Mile Canyon [Special Recreation and Cultural Management Area] in 1995.

. . .  The [Nine Mile Canyon Special Recreation Management Area] was established primarily to protect the wide range of historical and archeological resources in the [Nine Mile Canyon area].

West Tavaputs Plateau Natural Gas Full Field Development Plan, Draft Environmental Impact Statement UT-070-05-055, at 3-129 (Feb. 2008).

17.     The Hopi Tribe has recently stated that the lands of Nine Mile Canyon "contain the testimony of our ancestors' 'discovery' thousands of years ago, manifested in the prehistoric ruins, the rock 'art' and artifacts, and the human remains which continue to inhabit them."  Nine Mile Canyon is a Hopi Traditional Cultural Property identified for protection pursuant to the National Historic Preservation Act.

18.     Nine Mile Canyon and the surrounding canyons are being considered for designation as a National Historic District.

19.     The Tavaputs Plateau is marked by deep canyons, steep slopes, and high elevations (rising to more that 9,000 feet above sea level).  Vegetation ranges from pinyon and juniper to mountain fir.  Salt desert scrub as well as sagebrush, aspen, and ponderosa pine may be found in the area's varying elevations.

20.     The Tavaputs Plateau is home to mule deer, elk, and Rocky Mountain bighorn sheep as well as cottontail rabbits, black-tailed jackrabbits, coyotes, black bears, mountain lions, and various birds including hawks, owls, and sage grouse.

21.     Nine Mile Canyon and the Tavaputs Plateau have faced substantial encroachment from natural gas development activities over the past five years.

22.     The passage of vehicles related to natural gas development through Nine Mile Canyon is causing damage to rock art panels.

23.     Recent studies, including a study commissioned by the BLM, have shown that dust generated by truck traffic accessing natural gas wells in Nine Mile Canyon along with the magnesium chloride used to suppress dust from these vehicles may have a significant impact on rock art in Nine Mile Canyon.

24.     In 2004, BLM approved the West Tavaputs Plateau Drilling Program Environmental Assessment (West Tavaputs EA).  The West Tavaputs EA examined the impacts to the Tavaputs Plateau and surrounding area from the development of thirty-eight gas wells.

25.     Currently, BLM is in the process of preparing an environmental impact statement (EIS) to examine a proposal by Bill Barrett Corporation (BBC) to develop over 800 wells on the Tavaputs Plateau.  The principal means for accessing these wells would be through Nine Mile Canyon.  BLM is preparing an EIS because–among other reasons– of the potentially significant impacts from expanding development beyond the interim levels of development currently approved, including specifically the impact of dust from truck traffic on rock art in Nine Mile Canyon.

26.     Proposed energy development activities on the Tavaputs Plateau and Nine Mile Canyon attract significant interest from the public.  Recently, more than 53,000 comments were submitted to BLM regarding this BBC-proposed 800-well gas project for the Tavaputs Plateau.

27.     However, before BLM has completed the environmental impact statement for this massive project and subsequent to its 38-well West Tavaputs EA, the agency has approved sixty additional natural gas wells in the Tavaputs area using categorical exclusions.  That is, although the 38 wells linked to the West Tavaputs EA have already been developed in this area, an additional sixty wells have been approved without any additional NEPA analysis.

28.     In April 2008 the BLM's Price Field Office approved, without providing a public comment period, eleven gas wells in the Peter's Point and Prickly Pear units located on the Tavaputs Plateau.  These wells will be accessed via Nine Mile Canyon. The Price Field Office did not provide a detailed statement of the environmental impact of this proposed action or provide for public comment as required by NEPA.  Instead, it approved each application for permit to drill (APD) through an exclusion from NEPA based on a statutory categorical exclusion issued under Section 390(b)(2) of the Energy Policy Act of 2005 (EPAct) for "[d]rilling an oil or gas well at a location or well pad site at which drilling has occurred previously within 5 years prior to the date of spudding the well."  *See* Pub. L. No. 109-58, 119 Stat. 594 § 390(b).

29.     In May 2008 the BLM's Price Field Office approved four gas wells, without providing a public comment period, in the Prickly Pear Unit located on the Tavaputs Plateau.  These wells will be accessed via Nine Mile Canyon.  As before, the

Price Field Office did not provide a detailed statement of the environmental impact of this proposed action or provide for public comment as required by NEPA.  Instead, it approved each APD through an exclusion from NEPA based on a statutory categorical exclusion issued under Section 390(b)(2) of EPAct for "[d]rilling an oil or gas well at a location or well pad site at which drilling has occurred previously within 5 years prior to the date of spudding the well."

30.     The Price Field Office did not "reference prior approvals made following NEPA analysis" for these wells, as it is required to do.   *See* BLM, National Environmental Policy Handbook, H-1790-1, at App. 2 (2008).

31.     On May 16, 2008 the Coalition filed a request for State Director review for the four wells approved with categorical exclusions in May 2008 discussed *supra* in paragraph 29.  The Coalition requested that the State Director immediately issue a stay of all surface-disturbing activities (including, but not limited to, drilling activities and related truck traffic) and issue a final decision no later than ten business days from receipt of the request as provided for in 43 CFR § 3165.3(d), directing that the categorical exclusions be set aside and remanded to the Price Field Office for full compliance with NEPA and other laws and regulations.

32.     The request for State Director review contained information showing that extraordinary circumstances existed that should have prevented BLM from relying on categorical exclusions to approve the four gas wells at issue in that matter.

33.     On June 3, 2008 the BLM Utah State Office denied the Coalition's request for State Director review in a brief written decision.  This denial and accompanying explanation constitute BLM's final decision in this matter.

34.     Most recently in June 2008 the Price Field Office approved ten gas wells, again without seeking any public comment, in the Prickly Pear and Peter's Point units of the Tavaputs Plateau.  Again, the access to these sites will be through Nine Mile Canyon. The Price Field Office did not provide a detailed statement of the environmental impact of this proposed action or provide for public comment as required by NEPA.  Instead, the Price Field Office approved each APD through an exclusion from NEPA based on a statutory categorical exclusion issued under Section 390(b)(2) of EPAct for "[d]rilling an oil or gas well at a location or well pad site at which drilling has occurred previously within 5 years prior to the date of spudding the well."  *See* Pub. L. No. 109-58, 119 Stat. 594 § 390(b).

35.     The Price Field Office did not "reference prior approvals made following NEPA analysis" for these wells, as it is required to do.  *See* BLM, National Environmental Policy Handbook, H-1790-1, at App. 2 (2008).

36.     On June 20, 2008 the Coalition provided BLM's Price Field Office with a letter containing significant new information regarding air quality concerns in the Nine Mile Canyon region based on contemporary analysis and comments from the Environmental Protection Agency, which were dated May 23, 2008.

37.     BLM has not responded to the Coalition's June 20, 2008 letter.

38.     On July 22, 2008 the Coalition sent a letter to BLM's Price Field Office specifically requesting that BLM rescind the twenty-five statutory categorical exclusions at issue here.  Among other things, the Coalition noted that each of these APDs implicated extraordinary circumstances and thus the use of statutory categorical exclusions was arbitrary and capricious.

39.     BLM has not responded to the Coalition's July 22, 2008 letter.

40.     Based on information and belief, some surface disturbing activities have already taken place on these wells.

**FIRST CAUSE OF ACTION**
**Violation of NEPA and Its Implementing Regulations**
*(Use of Categorical Exclusions Despite the Existence of Extraordinary Circumstances)*

41.     Plaintiffs incorporate herein by reference paragraphs 1-40 above.

42.     Under NEPA regulations, agencies are tasked with developing procedures to implement NEPA.  *See* 40 C.F.R. § 1507.3.

43.     These procedures include specific criteria for typical classes of actions that do not require either an environmental impact statement or an environmental assessment, known as categorical exclusions.  40 C.F.R. § 1507.3(b).

44.     However, any procedures addressing categorical exclusions "shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect."  40 C.F.R. § 1508.4.

45.     The potential presence of extraordinary circumstances requires the preparation of either an environmental impact statement or an environmental assessment. *See* 40 C.F.R. § 1501.4.

46.     Agencies have an independent obligation to ensure that extraordinary circumstances do not exist prior to issuing a categorical exclusion.  As the Department of Interior's NEPA Manual explains, "[a]ny action that is normally categorically excluded must be subjected to sufficient environmental review to determine whether it meets any of the extraordinary circumstances, in which case, further analysis and environmental documents must be prepared for the action."  516 DM 2.3(A)(3).

47.     BLM did not independently acknowledge the existence of extraordinary circumstances and also disregarded evidence of extraordinary circumstances submitted by the Coalition.

48.     The Coalition submitted information to BLM's Utah State Office showing the presence or likely presence of extraordinary circumstances that rendered inappropriate the use of categorical exclusions for the four gas wells, approved via APDs, in May 2008.

49.     The information submitted by the Coalition showed that there were, or were likely to be, potentially significant impacts on "such natural resources and unique geographic characteristics as historic or cultural resources" in light of the documented scenic values and prehistoric resources of Nine Mile Canyon.  These values were highlighted by the comments of the Hopi Tribe, recently submitted to BLM for the West Tavaputs Plateau Natural Gas Full Field Development Plan, Draft Environmental Impact Statement, explaining that the lands of Nine Mile Canyon "contain the testimony of our ancestors' 'discovery' thousands of years ago, manifested in the prehistoric ruins, the rock 'art' and artifacts, and the human remains which continue to inhabit them."  Nine Mile Canyon is also a Hopi Traditional Cultural Property identified for protection pursuant to the National Historic Preservation Act.

50.     The information submitted by the Coalition showed that there were, or were likely to be, "highly uncertain and potentially significant environmental effects or involve[d] unique or unknown environmental risks."  These effects and risks were highlighted by the ongoing sampling and controversy over the impacts of oil and gas

well-servicing vehicles' dust mixed with magnesium chloride on the rock art of Nine

Mile Canyon.

51.     The information submitted by the Coalition showed that there was, or was

likely to be, "a direct relationship to other actions with individually insignificant but

cumulatively significant environmental effects"–such as the more than 800 additional

wells that are being considered by BLM for the Tavaputs Plateau and the many wells

already drilled in the area around Nine Mile Canyon.  All of these wells now require and

would require truck traffic for construction and servicing, which is routed through Nine

Mile Canyon.

52.     The information submitted by the Coalition showed that there were, or

were likely to be, "significant impacts on properties listed, or eligible for listing, on the

National Register of Historic Places," since Nine Mile Canyon has been nominated for

the National Register of Historic Places.

53.     The information submitted by the Coalition showed potential to "[l]imit

access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious

practitioners or significantly adversely affect the physical integrity of such sacred sites"

because it highlighted the comments of the Hopi Tribe submitted for the proposed 800-

well gas project on the Tavaputs Plateau.

54.     BLM also assumed that no extraordinary circumstances existed or were

likely to exist in the areas implicated by the other twenty-one gas wells at issue here as it

relied upon categorical exclusions to approve their respective APDs.

55.    Extraordinary circumstances also existed for each of the additional twenty-one gas wells at issue here rendering the use of categorical exclusions inappropriate.

56.    BLM's improper use of categorical exclusions in spite of the likely existence of extraordinary circumstances violated NEPA and its implementing regulations and was arbitrary, capricious, or otherwise not in accordance with law.  *See* 5 U.S.C. § 706(2)(A).

**SECOND CAUSE OF ACTION**
**Violation of NEPA and Its Implementing Regulations**
*(Failure to Prepare Adequate NEPA Analysis)*

57.    Plaintiffs incorporate herein by reference paragraphs 1-56 above.

58.    The Energy Policy Act of 2005 (EPAct), creates a "rebuttable presumption" for scenarios when a categorical exclusion may be appropriate.  Pub. L. No. 109-58, 119 Stat. 594 § 390.

59.    The scenario relevant to the present matter states that "Drilling an oil or gas well at a location or well pad site at which drilling has occurred previously within 5 years prior to the date of spudding the well" may be categorically excluded.  EPAct, Pub. L. No. 109-58, 119 Stat. 594 § 390(b)(2).

60.    BLM is required to develop implementing procedures for NEPA processes.  *See* 40 C.F.R. § 1507.3.

61.    BLM's implementing procedures which apply the categorical exclusions discussed in Section 390 of EPAct to NEPA situations state that they "reference prior approvals made following NEPA analysis."  BLM, National Environmental Policy Handbook, H-1790-1, at App. 2 (2008).

62.    BLM's Price Field Office relied on the second categorical exclusion

discussed in Section 390 of EPAct to approve the four gas well APDs issued in May

2008.  This is the categorical exclusion scenario discussed *supra* ¶ 59.

63.     BLM did not cite to any previous NEPA analysis for its reliance on the

second categorical exclusion available in EPAct for these four wells.

64.     BLM relied on the same categorical exclusion–Section 390(b)(2)–to

approve the other twenty-one wells at issue here, without citing to prior NEPA analysis.

65.     Defendants' reliance on Section 390 of EPAct was arbitrary, capricious, or

otherwise not in accordance with the law because it failed to rely on previous NEPA

analysis when approving these twenty-five wells.  *See* 5 U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION
### Violation of EPAct
*(BLM Violated EPAct by Failing to Satisfy the Rebuttable Presumption Clause)*

66.     Plaintiffs incorporate herein by reference paragraphs 1-65 above.

67.     EPAct creates a "rebuttable presumption" for scenarios when a categorical

exclusion may be appropriate.  Pub. L. No. 109-58, 119 Stat. 594 § 390.

68.     BLM did not provide any information regarding whether this presumption

would apply in the approval of the twenty-five categorical exclusions at issue in this case.

69.     Since these categorical exclusions were not made available for public

comment, there was no opportunity for the public to rebut this presumption.  Therefore it

is BLM's duty to ensure that this presumption is not rebutted.  It has not done this here.

70.     The potential existence of extraordinary circumstances rebuts the

presumption of Section 390 of EPAct that a categorical exclusion may be used.  *See*

EPAct, Pub. L. No. 109-58, 119 Stat. 594 § 390.

71.     As discussed above, Plaintiffs have shown that this presumption does not

apply here because of the likely existence of extraordinary circumstances.  *See supra* at ¶¶ 48-55.

72.     Therefore, the rebuttable presumption requirement of EPAct has been met and it was improper for BLM to use categorical exclusions here.  *See* EPAct, Pub. L. No. 109-58, 119 Stat. 594 § 390.

73.     Defendants' reliance on Section 390 of EPAct was arbitrary, capricious, or otherwise not in accordance with the law.  *See* 5 U.S.C. § 706(2)(A).

**FOURTH CAUSE OF ACTION**
**Violation of NEPA and Its Implementing Regulations**
*(BLM Violated NEPA's Supplemental Analysis Requirement)*

74.     Plaintiffs incorporate herein by reference paragraphs 1-73 above.

75.     NEPA requires BLM to "prepare supplements to either draft or final environmental impact statements if . . . there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  40 C.F.R. § 1502.9.

76.     BLM's "duty to supplement" applies equally to draft or final environmental impact statements and environmental assessments.

77.     The Coalition's June 20, 2008 letter provided BLM with significant new information regarding air quality analysis and concerns recently made available by the Environmental Protection Agency in a May 23, 3008 comment letter.

78.     BLM's categorical exclusions at issue here do not take into account significant new information that has been made available concerning air quality issues and the effect that oil- and gas-related activities will have on this resource.

79.     BLM has not prepared a determination of NEPA adequacy or otherwise evaluated whether environmental circumstances have changed since the twenty-five

categorical exclusions at issue here, or any NEPA analysis on which they might rely,

such that a new or supplemental NEPA analysis of the impacts from the construction and

operation of these wells on air quality is necessary.

80.    Accordingly, BLM has violated NEPA's implementing regulation, 40

C.F.R. § 1502.9, and has acted arbitrarily, capriciously, and contrary to law.  *See* 5 U.S.C.

§ 706(2)(A).

**FIFTH CAUSE OF ACTION**
**Violation of the NHPA and Its Implementing Regulations**
*(Failure to Determine the Effect of Project Activities on Cultural Resources)*

81.    Plaintiffs incorporate herein by reference paragraphs 1-80 above.

82.    The NHPA and its implementing regulations require that BLM evaluate

the impacts of a project on all historic properties prior to final approval of the project.

*See* 16 U.S.C. § 470f.  *See also* 36 C.F.R. § 800.1(a).

83.    BLM did not evaluate the impacts of vehicular access to the well sites at

issue here on the historic properties in Nine Mile Canyon and, therefore, did not evaluate

the impacts of the project on all historic properties prior to issuing its decisions.

84.    Defendants' failure to analyze these impacts prior to issuing its final

decision violated the NHPA and its implementing regulations and was arbitrary,

capricious, or otherwise not in accordance with law.  *See* 5 U.S.C. § 706(2)(A).

**SIXTH CAUSE OF ACTION**
**Violation of the NHPA and Its Implementing Regulations**
*(Failure to Consult with the Utah State Historic Preservation Officer, Native American
Tribes, and Members of the Public)*

85.    Plaintiffs incorporate herein by reference paragraphs 1-84 above.

86.    The NHPA requires that a federal agency shall "prior to the issuance of

any license . . . take into account the effect of an undertaking on any district, site,

structure, or object that is included or eligible for inclusion in the National Register [of Historic Places]."  16 U.S.C. § 470f.

87.     The NHPA's implementing regulations require that an "agency official shall determine whether the proposed Federal action is an undertaking as defined in [36 C.F.R.] § 800.16(y), and, if so, whether it is a type of activity that has the potential to cause effects on historic properties."  36 C.F.R. § 800.3(a).

88.     BLM is required to "make reasonable efforts to identify all historic properties and sacred sites on BLM-administered lands and private lands where a BLM undertaking will occur within Utah."  2001 State Protocol Agreement between Utah State Office, BLM, and Utah State Historic Preservation Office, Section VI.A.

89.     The approval of an oil and gas application for permit to drill constitutes an undertaking under the NHPA that has the potential to cause effects on historic properties and thus requires consultation with Native American tribes, the Utah State Historic Preservation Officer (Utah SHPO), and members of the public to identify historic properties and sacred sites prior to approval of the undertaking.

90.     Prior to APD approval, BLM's Price Field Office's archeologist did not conduct a file search of the cultural resource records located in the Price Field Office regarding the APD approvals of any of the twenty-five wells at issue here.

91.     There is no record that BLM's Price Field Office notified the Utah SHPO about the additional truck traffic in Nine Mile Canyon necessary to construct and service the wells.

92.     BLM failed to consult with any Native American tribes before it approved these twenty-five wells.

93.     BLM failed to consult with the public before it approved these twenty-five wells.

94.     BLM's failure to consult with the Utah SHPO, Native American tribes, and interested members of the public prior to the approval of the twenty-five wells at issue violated the NHPA and its implementing regulations and was arbitrary, capricious, and contrary to law.  *See* 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Mike Stiewig, Price Field Office Associate Manager, Bureau of Land Management; the United States Department of the Interior; and the Bureau of Land Management and that the Court:

(1)     Declare that Defendants have violated NEPA and the NHPA and their implementing regulations as set forth above; and

(2)     Declare unlawful and set aside the BLM's decisions approving the twenty-five gas wells at issue here until Defendants are in compliance with NEPA and the NHPA; and

(3)     Award injunctive relief directing Defendants to prohibit Bill Barrett Corporation from engaging in any on-the-ground disturbance and any construction or operations at the twenty-five well sites at issue here until the BLM and has complied with NEPA and the NHPA;

(4)     Retain jurisdiction of this action to ensure compliance with its decree;

(5)     Award Plaintiffs' costs incurred in pursuing this action, including

attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d),

and other applicable provisions; and

      (6)     Grant such other and further relief as is proper.

August 6, 2008.

                          Respectfully submitted.

                          /s/ Stephen Bloch

                          _____

                          Stephen H.M. Bloch
                          David Garbett
                          Southern Utah Wilderness Alliance

                          Nada Culver
                          The Wilderness Society

                          Attorneys for Plaintiffs
                          Nine Mile Canyon Coalition *et al.*